1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In re Michael Muldoon Elder, Debtor.

MICHAEL MULDOON ELDER,

                    Appellant,

vs.

SUSAN UECKER & OFFICIAL UNSECURED
CREDITORS' COMMITTEE,

                    Appellees.

_____/

No. C 04-3845 MHP
    (C 02-30677)


**MEMORANDUM AND ORDER**

On September 14, 2004, Michael M. Elder ("appellant") filed this appeal challenging the

bankruptcy court's order confirming the Chapter 11 joint reorganization plan (the "Plan") proposed by the

Chapter 11 trustee and the unsecured creditor's committee. Appellant challenges the Plan based on the

powers and fees granted to the Plan Administrator. Appellant seeks reversal of the Plan and remand to the

bankruptcy court for further proceedings. Having considered the parties' submissions and for the reasons

set forth below, the court rules as follows.


BACKGROUND

1    Prior to filing for bankruptcy, appellant owned and operated Vorpal Galleries, two retail art

2  galleries in New York City and San Francisco, for over thirty-five years.  Disclosure Statement to Joint

3  Plan of Reorganization (hereinafter "DS") at 2.  Appellant also owned three cooperative lofts in New York

4  City, one of which served as the location of the New York Vorpal Gallery.  Id.  In 1995, appellant's

5  former spouse, Alicia Maria Restrepo, filed for divorce.  Id. at 3.  The Supreme Court for the State of New

6  York awarded Restrepo two favorable judgments in the marital dissolution and property division

7  proceedings.  Id.  Restrepo used these judgments to obtain Sheriff's levies at both the New York and San

8  Francisco Vorpal Galleries.  Id.  In response to these levies, appellant filed a voluntary Chapter 11 petition

9  on March 15, 2002.  Id.

10    On January 15, 2003, appellee, Susan Uecker, was selected to serve as Chapter 11 Trustee.  Id.

11  at 5.  As Chapter 11 trustee, Uecker liquidated much of the estate, including the three cooperative lofts and

12  much of the artwork.  Id. at 6-10.  She also settled claims against appellant with his commercial landlord,

13  Max Limited, LLC, and with his former spouse.  Id. at 7-9.

14    On April 2, 2004, the Chapter 11 Trustee and the Official Unsecured Creditor's Committee,

15  appellees, jointly proposed the Plan of Reorganization.  Joint Plan of Reorganization (hereinafter "Plan") at

16  1.  The Plan called for Uecker to be able to compromise and settle claims objections and to continue to

17  receive her normal hourly compensation.  Plan §§ 9.5, 8.7.  On June 7, 2004, appellant objected to

18  confirmation on the basis of Uecker's powers and fees.  Memorandum Supporting Objections to

19  Confirmation (hereinafter "Objections").  On June 10, 2004, the bankruptcy court confirmed the Plan, over

20  appellant's objections, and Uecker became the Plan Administrator.

21    On September 14, 2004, appellant filed this appeal with the District Court, seeking reversal of the

22  Plan and remand to the bankruptcy court for further proceedings.  The court has jurisdiction to hear this

23  appeal pursuant to 28 U.S.C. section 158(a).  Appellant argues that the bankruptcy court erred in

24  confirming a reorganization plan that allowed the Plan Administrator to settle claims objections.  See 11

25  U.S.C. § 502.  Appellant also contends that appellee Susan Uecker, the former Chapter 11 trustee, should

26  be subject to the statutory fee cap placed on trustees, found in section 326(a) of Title 11 of the United

27  States Code, despite her new post-confirmation position as Plan Administrator.  Appellees oppose

28  appellant's arguments and argue that regardless of the merits, this appeal should be dismissed as moot.

1

2  LEGAL STANDARD

3        The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions

4  of law de novo.  See Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995).  A factual finding

5  is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake

6  has been made.  Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (B.A.P. 9th Cir. 1999).

7  Findings of fact based on credibility are given particular deference by reviewing courts.  Id. at 730.  Mixed

8  questions of fact and law are reviewed de novo.  Id.   Mootness is a jurisdictional issue which the court

9  reviews de novo.  See Baker & Drake v. Public Service Commission of Nevada (In re Baker & Drake),

10  35 F.3d 1348, 1351 (9th Cir. 1994).

11

12   DISCUSSION

13        Appellant contends that the bankruptcy court erred in confirming the Plan because it does not

14  comply with two applicable provisions of the bankruptcy code.  See 11 U.S.C. § 1129(a)(1).  Appellees

15  argue that the Plan does comply with the applicable provisions of Title 11 and, furthermore, that this appeal

16  should be dismissed as moot.  The parties raise three issues on appeal: (1) whether the appeal is moot; (2)

17  whether the bankruptcy court erred in confirming a reorganization plan that allowed the Plan Administrator

18  to compromise and settle claims objections; and (3) whether the post-confirmation Plan Administrator

19  should have been subject to the statutory fee cap on trustees.

20

21  I.      Mootness

22        Appellees argue that this appeal should be dismissed as moot because appellant failed to seek or

23  obtain a stay from the bankruptcy court's confirmation of the Plan pending appeal.  Appellees argue that

24  because appellant failed to obtain a stay, events have occurred pursuant to the Plan that make it impossible

25  and inequitable for the court to reach the merits of this appeal.  There are two ways in which bankruptcy

26  appeals may become moot.  First, appeals become moot when events occur that make it impossible for the

27  court to fashion effective relief.  Focus Media v. National Broadcasting Co. (In re Focus Media), 378 F.3d

28  916, 922 (9th Cir. 2004).  Second, appeals may become moot when a comprehensive change of

1  circumstances makes granting the relief sought inequitable.  Id. at 923.  "Ultimately, the decision whether or

2  not to unscramble the eggs turns on what is practical and equitable."  In re Baker & Drake, 35 F.3d at

3  1352.

4        Appellees argue that reaching the merits of this appeal is not practical because appellant failed to

5  seek a stay pending appeal, the Plan has been "substantially consummated," and no effective relief is

6  available.  "[T]he fact that a plan is substantially consummated and that the appellant failed to obtain a stay

7  pending appeal does not, by itself, render an appeal moot."  First Fed. Bank of California v. Weinstein (In

8  re Weinstein), 227 B.R. 284, 289 (B.A.P. 9th Cir. 1998) (citing Baker & Drake, 35 F.3d at 1351).

9  Mootness turns on whether the court can fashion effective relief without having to undo the many

10 complicated transactions of the reorganization process.  See Baker & Drake, 35 F.3d at 1351.  Effective

11 relief can be granted when the appellant requests an order requiring a party to the appeal to return

12 "erroneously disbursed funds."  Salomon v. Logan (In re Int'l Envtl. Dynamics, Inc.), 718 F.2d 322, 326

13 (9th Cir. 1983) (holding appeal not moot when court could order attorney to disgorge fees won in

14 bankruptcy court).  See also Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1007 (9th Cir. 1993)

15 (holding appeal not moot when court could order debtor to repay money to the estate).

16       In the present action, appellant seeks a reversal of the order confirming the Plan and remand to the

17 bankruptcy court with an order prohibiting the Plan Administrator from exercising the power to settle claims

18 in a way that conflicts with the bankruptcy code and requiring her to disgorge any payment in excess of the

19 statutory fee cap.  The relief appellant seeks would not require the court to "unravel a complicated

20 bankruptcy plan," but merely to order that a party to the appeal refrain from exercising a power that she is

21 not permitted under the bankruptcy code and give back any money to which she is not entitled.  See S.S.

22 Retail Stores Corp. v. Ekstrom (In re S.S. Retail Stores Corp.), 216 F.3d 882, 884 (9th Cir. 2000).  In

23 Baker & Drake, the Ninth Circuit held that an appeal was not moot despite the fact that the relief sought

24 involved requiring multiple third parties not before the court to modify their behavior in order to comply with

25 state law.  35 F.3d at 1352.  Here the relief sought is far less complicated and the effects of such relief will

26 be felt only by the Plan Administrator.  The most complicated aspect of the relief requested in the present

27 action requires only the disgorging of fees, which by itself is insufficient to render an appeal moot.  In re Int'l

28 Envtl. Dynamics, Inc., 718 F.2d at 326.  Based on the holdings of the Ninth Circuit cases discussed above,

1   the relief appellant seeks is not impossible for the court to fashion and therefore does not render this appeal

2   moot.

3           Alternatively, appellees argue that deciding this case on appeal is not equitable, because the relief

4   appellant seeks would involve the Plan Administrator working without the compensation upon which she

5   relied in agreeing to serve as Plan Administrator and possibly being ordered to disgorge prior compensation

6   in excess of the statutory fee cap.  Even where effective relief can be fashioned, "a court may still hold that

7   the equities weigh in favor of dismissing the appeal." In re S.S. Retail Stores, 216 F.3d at 885 (holding that

8   it would be inequitable to force a law firm to disgorge fees awarded in bankruptcy court when the appealing

9   trustee failed to seek a stay and the firm had continued to represent the debtor pursuant to the court's

10  orders).  In S.S. Retail, the court looked at a number of factors to determine whether hearing the merits

11  would be inequitable, including the absence of any impropriety by the law firm.  Id.  In S.S. Retail, the

12  trustee was challenging whether the firm was sufficiently disinterested, based solely on one of the firm's

13  employee's prior relationship with the debtor, even though the employee was not working on the

14  bankruptcy case.  Id.

15          In the present action, the equities are nearly the reverse of those in S.S. Retail.   First, a former

16  trustee named Plan Administrator by the Plan she proposed demands a certain scrutiny, especially in

17  regards to her own fees.  In S.S. Retail, the bankruptcy court noted that the law firm was acting in good

18  faith in continuing to represent the debtor; whereas, in the present action, Uecker is accused of trying to

19  circumvent the statutory fee cap by changing her title to Plan Administrator.  Here the misconduct alleged

20  by appellant involves intentional manipulation to avoid the strictures placed on trustees by the bankruptcy

21  code.  If, as appellant claims, the Plan Administrator was granted statutorily-barred powers under the Plan,

22  and if her fees exceed the statutory fee cap, it would be inappropriate to dismiss this appeal on equitable

23  grounds.

24          A case such as this one, involving allegations of self-dealing, presents precisely the type of

25  circumstances that merit review by the district court.  The rule appellees recommend the court adopt would

26  functionally bar debtors from challenging the compensation of trustees who had already been   paid.  For

27  the foregoing reasons, the court determines that this appeal is not moot on practical or equitable grounds.

28

1    II.        Plan Administrator's Power to Compromise and Settle Claims Objections

2            Appellant contends that the bankruptcy court erred in confirming the Plan because section 9.5 of

3    the Plan grants Uecker, as Plan Administrator, the power to compromise and settle claims objections.

4    Appellant argues that section 9.5 of the Plan violates section 502 of Title 11 of the United States Code

5    because it (1) denies the objecting party the right to have its objection heard by the bankruptcy court and,

6    similarly, that (2) this denial constitutes impermissible interference with a substantive right.  Whether section

7    502 prohibits a Plan Administrator from compromising and settling claims under all circumstances is a

8    question of statutory interpretation to be reviewed de novo.  See Tighe v. Celebrity Home Entertainment,

9    Inc. (In re Celebrity Home Entertainment, Inc.), 210 F.3d 995, 997 (9th Cir. 2000).  See also Redback

10   Networks, Inc. v. Mayan Networks Corp. (In re Mayan Networks Corp.), 306 B.R. 295, 298 (B.A.P.

11   9th Cir. 2004) (applying de novo standard to interpretation of 11 U.S.C. section 502(b)).

12            Appellant contends that the Plan Administrator's ability to compromise and settle claims violates

13   section 502(b)'s mandate that the court must hear and rule on objections.  Section 502(b) provides that if

14   an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such

15   claim."  11 U.S.C. § 502(b).  Appellees argue that because the power granted the Plan Administrator in

16   section 9.5 of the Plan must be exercised in accordance with Article XII of the Plan, this provision does not

17   violate section 502(b) of the bankruptcy code.  Article XII of the Plan limits the power of the Plan

18   Administrator to settle claims objections by providing that all claims objections will be heard and resolved

19   by the bankruptcy court, in the event that the Plan Administrator "is unable to promptly resolve the

20   dispute."  Given this limitation on the Plan Administrator's power, the issue becomes whether section

21   502(b) is satisfied by a Plan that allows for a hearing before the court only for those parties who cannot

22   settle their claims objections with the Plan Administrator first.

23            The issue is thus whether section 502(b) requires the bankruptcy court to hear all claims objections,

24   even when the objecting party is content to resolve the matter outside of court through the Plan

25   Administrator.  Section 502(b) does not provide an objecting party an absolute and immediate right to a

26   hearing.  According to Title 11's rules of construction, "after notice and a hearing" means only "such

27   opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).

28   Subsection 102(1)(B) "authorizes an act without an actual hearing" if "such a hearing is not requested

6

1    timely" or if there is "insufficient time for a hearing."  According to the historical notes following section 102,

2    the language of subsection (1) was designed to "permit the bankruptcy judge to stay removed from the

3    administration of the bankruptcy or reorganization case, and to become involved only when there is a

4    dispute about a proposed action."  See 11 U.S.C. § 102.

5            Given the construction of and rationale behind the "notice and a hearing" provisions in the

6    bankruptcy code, the issue in the present action is further refined: does the intervening settlement

7    opportunity in the claims objection process, as described in Article XII of the Plan, deny the objecting party

8    an "opportunity for a hearing as is appropriate in the particular circumstances?"  Article XII does not deny

9    the objecting party a hearing before the bankruptcy court, it merely adds the possibility that the Plan

10   Administrator might be able to resolve the objection without involving the bankruptcy court.  If the

11   objecting party refuses to settle with the Plan Administrator, the objection will be heard and resolved by the

12   bankruptcy court.  Although there is no Ninth Circuit precedent on this issue, one bankruptcy court has

13   held that while "Section 502(b) might seem to imply that a hearing is required in each instance, Section

14   102(1) makes it clear that a hearing is not statutorily required."  In re Moses, 9 B.R. 370, 373 (Bankr.

15   N.D.G.A. 1981).  In a situation where the objecting party is the trustee, a "creditor may request a hearing if

16   there is a real dispute . . . if there is no such dispute the creditor may decide to waive the hearing."  Id. at

17   374.  If a creditor may waive a hearing without violating section 502, it follows that a creditor or debtor

18   may choose to waive their rights to a hearing by settling a claim objection with the Plan Administrator

19   without violating the code.

20           Having determined that a hearing is not necessarily required, the issue remains as to whether under

21   the code, it is inappropriate for the Plan Administrator to settle claims objections at all.  Section 502(b)

22   states that if an objection is made "the court . . . shall determine the amount of such claim."  11 U.S.C.

23   § 502(b).  Appellant argues that any attempt to interpose an additional procedural step in the objections

24   process would impermissibly interfere with the right of an objecting party to have its objection resolved by

25   the bankruptcy court.  See 11 U.S.C. § 502(b).  One bankruptcy court has held that a proposed plan was

26   unconfirmable as a violation of section 502, because it "provide[d] that all objections or disputes as to

27   claims [were to be] resolved by an arbitrator . . . rather than by [the] court."  In re Filex, Inc., 116 B.R. 37,

28   40 (Bankr. S.D.N.Y. 1990). The situation in the present action is distinct from that in Filex.  In Filex, the

1  parties were attempting to bypass the Chapter 11 reorganization process entirely by requesting that the

2  court approve a disclosure statement which would effectively allow for removal to arbitration.  Id. at 41.  In

3  the present action, the parties are not attempting to bypass the reorganization process or the bankruptcy

4  court.  Instead the Plan merely attempts to reduce the number of time-consuming objection hearings by

5  offering the parties a chance to settle claims objections through the Plan Administrator prior to requesting a

6  hearing before the court.  Such compromises should be encouraged in the bankruptcy context.  See In re

7  Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).  See also Ira S. Dizengoff et al.,

8  Expanding the Reach of Alternative Dispute Resolution in Bankruptcy: The Legal and Practical Bases for

9  the Use of Mediation and the Other Forms of ADR, 46 S.C. L. Rev. 1259, 1284-1304 (1995) (explaining

10  the legal bases and advantages to out-of-court settlement of controversies in the bankruptcy context).

11       Appellant also contends that the Plan Administrator should not be given a power that is not

12  specifically granted her by the bankruptcy code.  However, the code specifically allows a plan to "include

13  any other appropriate provision not inconsistent with the applicable provisions" of the code.  11 U.S.C.

14  § 1123(b)(6).  Federal Rule of Bankruptcy Procedure 9019 contemplates a plan in which someone other

15  than the bankruptcy judge has the power to compromise or settle a claim.  Rule 9019(a) states that "the

16  court may approve a compromise or settlement" upon a motion by the trustee.  Fed. R. Bankr. P. 9019(a).

17  This rule allows the trustee, a figure similar in powers to the Plan Administrator, to compromise or settle a

18  claim and then move for court approval.  It also suggests that while the court "may approve" the settlement,

19  there is nothing mandatory about this step.  Rule 9019(b) reinforces this notion by stating that "the court

20  may . . . authorize the trustee to compromise or settle controversies . . . without further hearing or notice."

21  Fed. R. Bankr. P. 9019(b).  Furthermore, the court may allow someone other than the trustee to

22  compromise and settle claims, provided that there is sufficient reason and that person is acting in the interest

23  of maximizing the estate for all creditors.  Wells Fargo Bank v. Guy F. Atkinson Co. (In re Guy F.

24  Atkinson Co.), 242 B.R. 497, 502 (B.A.P. 9th Cir. 1999).

25       Appellant argues that Rule 9019 cannot be interpreted to allow the Plan Administrator to settle

26  claims objections, because such an interpretation would violate the Rules Enabling Act.  See 28 U.S.C.

27  § 2075.  Appellant contends that granting the Plan Administrator the power to compromise and settle

28  claims objections works to impermissibly "abridge, enlarge, or modify" a substantive right.  28 U.S.C.

1   § 2075.  This contention is merely a reframing of appellant's initial argument that the Plan denies parties the

2   right to pursue claims objections and to have those objections heard and resolved by the court.  As

3   discussed, this falsely characterizes the Plan, which allows objecting parties who prefer not to settle through

4   the Plan Administrator to resolve their disputes before the bankruptcy court.

5           Based on the relevant cases, code provisions and rules, there is nothing inherently inappropriate

6   about the Plan Administrator being given the ability to compromise and settle claims objections, provided

7   that those who are unhappy with the results are still entitled to a hearing in the bankruptcy court.  Adding

8   the procedural step of possible settlement through the Plan Administrator does not violate an objecting

9   party's right to a final determination on the correct amount of a claim by the bankruptcy court as provided

10  by section 502(b) of the code.

11

12  III.       Fee Cap

13          Appellant alleges that the bankruptcy court erred in confirming the reorganization plan because the

14  Plan provides for Uecker, as Plan Administrator, to be compensated according to her customary hourly

15  rates unrestricted by the statutory fee cap on trustee compensation.  See 11 U.S.C.  § 326(a).  Appellant

16  argues that because Uecker's responsibilities as Plan Administrator are essentially the same as her former

17  duties as Chapter 11 trustee, her compensation should be subject to the statutory trustee fee cap.  Whether

18  a post-confirmation plan administrator, with duties similar to those of a trustee, should be subject to the

19  statutory trustee fee cap is a question of statutory interpretation to be reviewed de novo.  See In re

20  Celebrity Home Entertainment, Inc., 210 F.3d at 997.  See also In re North American Oil & Gas, Inc.,

21  130 B.R. 473, 477-78 (Bankr. W.D. Tex. 1990) (applying de novo standard to district court's review of

22  trustee compensation).

23          Appellant argues that appellees are attempting to avoid the statutory fee cap by "renaming the

24  trustee a Plan Administrator."  Appellant's Reply Brief at 13.  Under section 1123(b)(6) of Title 11 of the

25  United States Code, the bankruptcy court can confirm a reorganization plan that provides for a liquidation

26  agent.  See Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen), 66 B.R. 104, 108 (B.A.P. 9th

27  Cir. 1986).[1]  See also 11 U.S.C. § 1123(b)(3) (allowing for the appointment of a "representative of the

28  estate").  Though not specifically named in the bankruptcy code, "a liquidation agent, named by the plan

9

1   proponent, with duties and manner of compensation set out in the plan, is an appropriate party to effectuate

2   a liquidation plan." Schultz v. Mitchell-Huron Production Credit Association (In Re Schultz), 69 B.R. 629,

3   632 (D.S.D. 1987).  It is possible for the same person to serve as the Chapter 11 trustee and the post-

4   confirmation liquidation agent without violating the bankruptcy code. See Woods v. Kenan (In re Woods),

5   173 F.3d 770, 781 (10th Cir. 1999). See also Mancuso v. Sullivan (In re Sullivan), 153 B.R. 751 (Bankr.

6   N.D. Tex. 1993) (holding that a post-confirmation trustee, though the same individual as the pre-

7   confirmation Chapter 11 trustee, was subject to different regulations).  Based on these holdings, there is

8   nothing inherently improper about a Chapter 11 trustee being appointed Plan Administrator as part of the

9   reorganization plan.  Indeed, as a policy matter, there may be desirable efficiencies to be gained from a

10  bankruptcy trustee assuming the responsibilities of implementing a Chapter 11 plan.

11          The real issue is whether Uecker, as Plan Administrator, may recover fees in excess of those she

12  could recover as Chapter 11 trustee under the statutory fee cap.  The trustee fee cap in section 326(a)

13  applies to Chapter 7 and Chapter 11 trustees. See 11 U.S.C. § 326(a).  If the same person serves as both

14  Chapter 7 and Chapter 11 trustee, his or her total fees for all services provided under both chapters will be

15  subject to the statutory fee cap, so as to avoid "double dipping." Tiffany v. Gill (In re Financial

16  Corporation of America), 946 F.2d 689, 690 (9th Cir. 1991).  Appellees argue, however, that a post-

17  confirmation Plan Administrator is legally distinguishable from a pre-confirmation Chapter 11 trustee and

18  thus should not be subject to the statutory fee cap imposed on Chapter 11 trustees.  Appellees cite two

19  bankruptcy courts' decisions as persuasive authority for this proposition.  "The postconfirmation trustee is a

20  contractual, state-law trustee . . . whose powers and duties are determined by the Plan and not by Chapter

21  11 of the Bankruptcy Code." In re Sullivan, 153 B.R. at 757.  "The compensation of the liquidating agent

22  is controlled by the terms of the chapter 11 plan." In re North American Oil & Gas, Inc, 130 B.R. at 480.

23  Though not specifically addressed in Ninth Circuit case law, the proposition that post-confirmation trustees

24  are "contractual" trustees, regulated primarily by the reorganization plan rather than the bankruptcy code,

25  appears to be in harmony with Ninth Circuit precedent.  This Circuit has held that even though a party may

26  be bound by a reorganization plan to which they did not assent, a "Chapter 11 bankruptcy plan is

27  essentially a contract between the debtor and his creditors, and must be interpreted according to the rules

28  governing the interpretation of contracts." Miller v. United States, 363 F.3d 999, 1004 (9th Cir. 2004).

10

1  Appellant cites no case law contrary to this position.  The court holds that a Plan Administrator is legally

2  distinguishable from a pre-confirmation Chapter 11 trustee and, therefore, not subject to the statutory fee

3  cap.

4

5  CONCLUSION

6       For the reasons stated above, appellant's claims are DENIED.  The bankruptcy court's order is

7  AFFIRMED.

8       IT IS SO ORDERED.

9

10  Dated: May  31, 2005

11

12       MARILYN HALL PATEL
     United States District Court Judge

13       Northern District of California

14

15

16  **ENDNOTES**

17  1. In Jorgensen, the court based it's decision on the 1986 version of section 1123(b)(5) of Title 11 of the
United States Code.  In 1994, the code was amended and section 1123(b)(5) was redesignated as

18  1123(b)(6).  Pub. L. No. 103-394 § 206.

19

20

21

22

23

24

25

26

27

28